JUDGE STITES
delivered the ohnion of the court:
This was an' action brought by appellants against appellee to recover a tract of land to which they asserted right under the will of their grandfather, Daniel Carter, deceased, which will they exhibited with their petition.
A demurrer was sustained to the petition, and judgment rendered against them for costs; to reverse which this appeal is prosecuted.
The case turns altogether upon the construction of Daniel Carter’s will. That part of the will which relates to the land in dispute reads as follows:
“ I bequeath to my daughter Corinna all my estate, real and personal, consisting of two hundred and seven acres of land lying on the Ohio river, in the State of Indiana, immediately opposite my present residence, one hundred acres of land whereon I now reside, 16 negroes, namely, to-wit: Toliver, Rachel,” and others, (naming them,) “ these being slaves for life. All my household and kitchen furniture, and all of my stock of cattle, horses, and hogs.”
“ Now, in case my daughter Corinna should change her name by marriage, the title of the land and one half of the negroes above *467 named does not pass to her husband, but I reserve the same for her and her heirs only. Yet her husband may have the use of the same so long as they may live together.”
It is contended that the foregoing language indicates an intent on the part of the testator to limit the estate in the land devised to his daughter to a life estate, in the event of her marriage, with a use to her husband whilst they lived together.
The learned and ingenious counsel for appellants concedes that the comprehensive words of the first paragraph quoted vests in the devisee an absolute estate in all the property; but argues that the subsequent paragraph was obviously designed to restrict the absolute estate in the land to an estate for life, in the event of the marriage of the daughter. Or, in other words, that the words “for her and her heirs only,” in connection with the language immediately preceding and following them, are synonymous with, and intended to signify, “ for her and her children only,” and must, in order to effectuate the intention of the testator, be regarded as words of purchase and not of limitation.
In support of this position we are, referred to a number of cases heretofore decided by this court, in which the most liberal construction of wills and deeds has been indulged in, with a view to carry out the intention of the parties.
It has been often said by this court that the intention of the parties should be the governing principle in the construction of all instruments; that the words used should be taken in the sense in which the party understood them; and “in cases in which technical rules have been applied to particular expressions by the court, if we are satisfied after an examination of the instrument that such technical rules will not carry out, but defeat the intention of the author, the rules must yield to the intention, and such a construction must be given as will effectuate it.” (2 B. Mon., 166; 12 B. Mon., 656; 14 B. Mon., 576, and the authorities cited in the last case.)
The rule here laid down may be regarded as well settled; and the question arises, whether this court can say, “ upon an examination of the instrument,” that we are satisfied the testator meant to use the words in question, in a sense different from *468 that which the law ascribes to them, and thus diminished † estate he had previously conferred upon his daughter.
The words used by him have a familiar legal significatic and to authorize the conclusion that they were not used in th but a different sense, something more is demanded than mere doubtful expressions upon which ingenious and plausible surmises may be founded. The context of the entire instrument, or so much of it as relates to the subject to which the words to be construed are intended to apply, must satisfy the mind that the party intended to use them in a sense different from their ordinary legal signification. Such intention must be clear.
This rule is recognized in the cases supra, and more recently in the case of Williamson vs. Williamson. (18 B. Mon., 371.) And we are by no means inclined to relax it.
. Is such intention apparent here? We think not.
Corinna, as is evident from the will, was the sole object of the testator’s bounty. She was his universal devisee and legatee. The first sentence quoted invests her with an absolute estate in fee in all the property therein named. This is clear. The intention to restrict must be gathered, if at all, from the next sentence, which is: “In case my daughter Corinna should change her name by marriage, the title of the land and one half of the negroes above named does not pass to her husband, but I reserve the same for her and her heirs only; yet the husband may have the use of the land so long as they may live together.”
What title does the testator refer to ? Evidently that which he had .already conferred upon his daughter. The object was not to lessen or diminish the quantity of the estate, but to forbid the title already designated from passing to the husband. The title was to remain as though no marriage had occurred; but the husband is permitted to use the land as long “ as they may live together.”
It is apparent that the testator labored under the belief that the law would give the husband the land of the wife upon marriage, as it then did the slaves, and his intention was to prevent that.
But suppose we consider the last sentence, or reservation, as *469 it is termed, without reference to the preceding portion of the will. Does it confer upon Cori'nna an estate for life, or any other estate less than a fee-simple ?
The words are not “her and her children,” as in Carr vs. Estill, (16 B. Mon.,) nor to her “ during life, and then to her heirs, &c.,” as in Turman vs. White, (14 B. Mon., 568,) nor do they create or attempt to create a remainder over in the event of the death of the devisee “without issue,” as in Moore vs. Moore, (12 B. Mon., 652,) and Prescott vs. Prescott, (10 B. Mon., 56.) but simply “ for her and her heirs only” — words apt and fit to create an estate in fee, and which, when used without qualification or restriction, always denote that degree or quality of estate.
We suppose no other meaning would have been ascribed to the words if Corinna had survived her husband, or had died without children.
Take, then, the two paragraphs or sentences separately, and neither one imports an estate less than a fee. And how such effect can be given to them, when considered together, it is difficult to perceive. It is not doubted that the title conferred by the first is absolute, and it seems to us that “the title” referred to in the last is that created by the first. In our opinion, the testator intended by the reservation to secure to his daughter (unaffected by any marriage she might contract or by what he supposed the law in relation to marital rights then was) precisely the same estate he had already created; or, in other words, that “the title to the land” should remain as though no marriage had occurred.
However that may be, we have no hesitation in saying that there is nothing in the will which would justify the conclusion that the testator used the words “her and her heirs only,” in any other than their ordinary and legal sense. And, giving them that signification, the result is, that Gorinna took by the will an estate in fee in the land in dispute.
The claim of appellants seems to be based altogether upon a different construction of the will — under which they claim, not as heirs at law of their deceased mother, but as devisees in remainder of their grandfather Carter. And as the petition *470 discloses.no other claim than this, we think the demurrer was rightfully sustained.
Judgment affirmed.